UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
BESSIE MCCAFFREY,

                         Plaintiff,

-against-

JP MORGAN CHASE,

                         Defendant.
-------------------------------------------------------- x

JUDGE CHIN

07 Civ. 07 CV 313

**COMPLAINT**

PLAINTIFF DEMANDS
TRIAL BY JURY

RECEIVED JAN 1 2 2007 U.S.D.C. S.D.N.Y. CASHIERS

       Plaintiff, Bessie McCaffrey, by her attorneys, Liddle & Robinson, L.L.P., for her complaint alleges as follows:

## THE PARTIES

       1. Mrs. McCaffrey is a black female over the age of 40. Her current address is 147 Cebra Avenue, Staten Island, New York 10304.

       2. Upon information and belief, JP Morgan Chase ("Chase") is a corporation organized and existing under the laws of Delaware with its principal place of business at 270 Park Avenue, New York, New York 10017.

## THE NATURE OF THE ACTION

       3. This is a civil action for damages and remedies brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the New

York State Human Rights Law, N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.

## JURISDICTION AND VENUE

4. Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5. Mrs. McCaffrey filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 30, 2006. Mrs. McCaffrey received from the EEOC a Notice of Right to Sue on October 17, 2006.

6. Mrs. McCaffrey served copies of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel prior to filing it in the United States District Court.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Mrs. McCaffrey's claims occurred in the Southern District of New York.

## FACTS

8. Mrs. McCaffrey is a black female whose date of birth is July 1, 1949.

9. Mrs. McCaffrey has been employed by Chase or one of its predecessors for nearly 35 years. For the last 18 years, she has been employed as an account executive ("AE") for the bank's wholesale mortgage product.

10. Throughout her employment with Chase, Mrs. McCaffrey has been qualified for her position and has performed her duties in a professional and competent manner. During the last five years, Mrs. McCaffrey been ranked among the top 15 percent of AE's nationally. On the basis of her sales revenue, Mrs. McCaffrey was a member of the firm's Leader's Club during the years 1999, 2002 and 2003.

11. Mrs. McCaffrey is currently one of two black Chase AEs in the Northeast. Upon information and belief, the percentage of black Chase AE's nationwide is very small.

12. In or around 1987, the bank began a wholesale mortgage program, to which Mrs. McCaffrey was recruited as an AE. She had previously worked as a teller, branch manager and sales officer. In her AE position, which she still holds today, Mrs. McCaffrey is responsible for sourcing, servicing and growing relationships with mortgage brokers and bankers in the New York area. Mrs. McCaffrey currently covers approximately 30 accounts.

13. In 1996, Dan Intemann became Mrs. McCaffrey's sales manager. Shortly thereafter, when another AE left the bank, Mr. Intemann reassigned all of that AE's top-producing Manhattan accounts to two white account executives, while Mrs. McCaffrey received the balance of the accounts, including Guardhill Financial ("Guardhill") and MSD.

14. Alan Rosenbaum, the owner of Guardhill, complained upon Mrs. McCaffrey's assignment that he was receiving an inferior AE, when he knew nothing about her other than her race and gender. Since that time, as a result of Mrs. McCaffrey's efforts, Guardhill has become one of the bank's top 20 accounts. Although Mr. Rosenbaum consistently requested a new AE throughout her tenure with the account, Mrs. McCaffrey formed successful relationships with the loan officers at Guardhill and generated substantial amounts of business from the account.

15. In or around 2000, Mr. Intemann was replaced by Jeff Leinan, who later hired Tim Lernihan to manage the junior sales team and expand the sales force.

16. In early 2005, Mr. Lernihan became Mrs. McCaffrey's direct supervisor.

17. In March 2005, Mrs. McCaffrey lost coverage of MSD when accounts were reassigned among AEs by geographical territory. Over the course of nine years, Mrs. McCaffrey had grown MSD from a non-performing account into one of her top ten accounts. The principal of the account, John Baker, specifically requested that Mrs. McCaffrey remain on the account and expressed his displeasure at her removal, but the account was nonetheless transferred and has not been returned. Contrastingly, a white male employee, Ed Dillon, received back two accounts that had been transferred away from him during this reassignment.

18. In late 2005, after an AE on Long Island resigned, Mr. Lernihan circulated a list of that AE's accounts, asking if anyone would like them. Mrs. McCaffrey later learned that all of the performing accounts had already been transferred to mostly white male AEs.

19. In January 2006, a dozen of Guardhill's employees – including two top producers – left to work for Manhattan Mortgage. The business generated by those individuals remains at Chase but has transferred from Mrs. McCaffrey to the AE covering Manhattan Mortgage. As a result, Guardhill has hired new producers, including one, Suzanne Bach, who had a prior business relationship with a colleague of Mrs. McCaffrey's, Joe Martens. Upon information and belief, in or around March 2006, Mr. Rosenbaum requested on Ms. Bach's behalf that Mr. Martens be assigned as the Chase AE covering Guardhill. Chase granted his request and removed the account from Mrs. McCaffrey.

20. On April 12, 2006, Mr. Lernihan issued Mrs. McCaffrey a written performance warning. That warning inappropriately linked three account coverage changes over a two-year period in an effort to raise performance issues where none existed. Mr. Lernihan also failed to follow company policy in removing accounts from, and issuing a written warning to, Mrs. McCaffrey without previously giving her any oral warnings or otherwise raising performance concerns. Upon information and belief, this policy has been followed before removing accounts from younger, white male AEs.

21. The warning was inaccurate in several respects:

a. In December 2003,[1] Mrs. McCaffrey lost coverage of the Trachtmann & Bach account. Alan Trachtmann and John Bach created a partnership in 2002. Although Mrs. McCaffrey previously had been Mr. Trachtmann's AE for 16 years, with no complaints concerning her performance, Mr. Bach wanted an AE

---

[1] The warning inaccurately states December 2004.

5

located in Manhattan. Mrs. McCaffrey was assigned as the AE for the partnership over Mr. Bach's strong objections, and consistently met her sales goals for the reconstituted account. Eventually, Mr. Bach successfully petitioned for a change in coverage, but not as a result of Mrs. McCaffrey's performance. The warning thus inaccurately states that the change in coverage was made "after months of complaints ... regarding a lack of service and training." It is also not accurate that Mr. Lernihan "discussed the reason for the change" at the time it occurred – Mr. Lernihan was not even Mrs. McCaffrey's supervisor at the time. Instead, her then-supervisor, Jeff Leinan, explained that the coverage change was a result of politics, not performance.

b.  In December 2005, Mrs. McCaffrey lost coverage of the First Merchants account. Mrs. McCaffrey had covered First Merchants for 16 years. The owner of First Merchants, Frank Gooden, lost two of his loan processors to competitors in late 2005 and sought to blame Mrs. McCaffrey for their departure, although she had nothing to do with it. It is completely untrue, moreover, that Mr. Lernihan told Mrs. McCaffrey at the time of the reassignment that it was the result of her "lack of service and training." As a result of Mrs. McCaffrey's efforts, First Merchants was one of Chase's top 20 accounts.

c.  Finally, with regard to Guardhill, it is not true that Guardhill "demanded" another AE "due to lack of service and training." Instead, as discussed above, it was again a political decision.

6

22. Although these account changes were not the result of Mrs. McCaffrey's performance, but of various outside factors, she was not given accounts to replace them, and her compensation has thus suffered. Upon information and belief, younger, white male AEs have been given replacement accounts under similar circumstances

23. Mrs. McCaffrey receives a $25,000 base salary, with the rest of her compensation paid as commissions on the sales revenue she generates.

24. Chase rescinded Mrs. McCaffrey's written performance warning in late July 2006. Even then, none of the removed accounts were returned to Mrs. McCaffrey, nor were any new accounts assigned to her.

25. Upon information and belief, Mr. Lernihan has fired only non-white women during his tenure, including a Hispanic AE. He also fired a black female loan processor, allegedly for insubordination, while retaining a white female loan processor about whom several of Mrs. McCaffrey's clients had raised complaints (which Mrs. McCaffrey had conveyed to Mr. Lernihan).

### FIRST CLAIM

(Sex Discrimination Under Title VII)

26. Mrs. McCaffrey repeats and realleges the allegations contained in paragraphs 1 through 25 above as if separately set forth herein.

27. At all relevant times, Mrs. McCaffrey was an "employee" under Title VII, 42 U.S.C. § 2000e(f).

28. Chase is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

29. By its actions detailed above, Chase has unlawfully discriminated against Mrs. McCaffrey on the basis of her sex in violation of Title VII.

30. As a result of Chase's discriminatory conduct, Mrs. McCaffrey has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

31. Chase's discriminatory conduct was taken with reckless indifference to Mrs. McCaffrey's rights. Mrs. McCaffrey is therefore entitled to punitive damages under Title VII.

## SECOND CLAIM

(Sex Discrimination Under the
New York State Human Rights Law)

32. Mrs. McCaffrey repeats and realleges the allegations contained in paragraphs 1 through 31 above as if separately set forth herein.

33. At all relevant times, Mrs. McCaffrey was an "employee" for purposes of the New York State Human Rights Law.

34. Chase is an "employer" for purposes of the New York State Human Rights Law.

35. By its actions set forth above, Chase unlawfully discriminated against Mrs. McCaffrey on the basis of her sex in violation of the New York State Human Rights Law.

36. As a result of Chase's discrimination, Mrs. McCaffrey has suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

### THIRD CLAIM

(Gender Discrimination Under the
New York City Human Rights Law)

37. Mrs. McCaffrey repeats and realleges the allegations contained in paragraphs 1 through 36 above as if separately set forth herein.

38. Mrs. McCaffrey is a "person" under § 8-102(1) of the New York City Human Rights Law.

39. Chase is an "employer" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

40. By its actions detailed above, Chase has unlawfully discriminated against Mrs. McCaffrey on the basis of her gender in violation of the New York City Human Rights Law.

41. By reason of the foregoing, Mrs. McCaffrey suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

42. Upon information and belief, Chase's discriminatory conduct was taken with reckless indifference to Mrs. McCaffrey's rights, entitling her to punitive damages under the New York City Human Rights Law.

## FOURTH CLAIM

(Race Discrimination Under Title VII)

43. Mrs. McCaffrey repeats and realleges the allegations contained in paragraphs 1 through 42 as if separately set forth herein.

44. By its actions detailed above, Chase has unlawfully discriminated against Mrs. McCaffrey on the basis of her race in violation of Title VII.

45. As a result of Chase's discriminatory conduct, Mrs. McCaffrey has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

46. Chase's discriminatory conduct was taken with reckless indifference to Mrs. McCaffrey's rights. Mrs. McCaffrey is therefore entitled to punitive damages under Title VII.

## FIFTH CLAIM

(Race Discrimination Under the
New York State Human Rights Law)

47. Mrs. McCaffrey repeats and realleges the allegations contained in paragraphs 1 through 46 above.

48. By its actions set forth above, Chase unlawfully discriminated against Mrs. McCaffrey on the basis of her race in violation of the New York State Human Rights Law.

49. As a result of Chase's discrimination, Mrs. McCaffrey has suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

## SIXTH CLAIM

(Race Discrimination Under the
New York City Human Rights Law)

50. Mrs. McCaffrey repeats and realleges the allegations contained in paragraphs 1 through 49 above.

51. By its actions detailed above, Chase has unlawfully discriminated against Mrs. McCaffrey on the basis of her race in violation of the New York City Human Rights Law.

52. By reason of the foregoing, Mrs. McCaffrey suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

53. Upon information and belief, Chase's discriminatory conduct was taken with reckless indifference to Mrs. McCaffrey's rights, entitling her to punitive damages under the New York City Human Rights Law.

## SEVENTH CLAIM

(Age Discrimination Under the ADEA)

54. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 53 as if separately set forth herein.

55. At all relevant times, Mrs. McCaffrey was an "employee" under the ADEA, 29 U.S.C. § 630(f).

56. Upon information and belief, Chase is an "employer" under the ADEA, 29 U.S.C. § 630(b).

57. By its actions detailed above, Chase has unlawfully discriminated against Mrs. McCaffrey on the basis of her age in violation of the ADEA.

58. By reason of the foregoing, Mrs. McCaffrey suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

59. Upon information and belief, Chase's conduct was willful, entitling Mrs. McCaffrey to liquidated damages pursuant to 29 U.S.C. § 626(b).

## EIGHTH CLAIM

(Age Discrimination Under the
New York State Human Rights Law)

60. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 59 as if separately set forth herein.

61. By its actions detailed above, Chase has unlawfully discriminated against Mrs. McCaffrey on the basis of her age in violation of the New York State Human Rights Law.

62. By reason of the foregoing, Mrs. McCaffrey suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

## NINTH CLAIM

(Age Discrimination Under the
New York City Human Rights Law)

63. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 62 as if separately set forth herein.

64. By its actions detailed above, Chase has unlawfully discriminated against Mrs. McCaffrey on the basis of her age in violation of the New York City Human Rights Law.

65. By reason of the foregoing, Mrs. McCaffrey suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

66. Upon information and belief, Chase's discriminatory conduct was taken with reckless indifference to Mrs. McCaffrey's rights, entitling her to punitive damages under the New York City Human Rights Law.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. On her First Claim, back pay and front pay in amounts to be determined at trial, compensatory damages, punitive damages, attorneys' fees, costs and interest;

B. On her Second Claim, back pay and front pay in amounts to be determined at trial, compensatory damages, costs and interest;

C. On her Third Claim, back pay and front pay in amounts to be determined at trial, compensatory damages and punitive damages, attorneys' fees, costs and interest;

D. On her Fourth Claim, back pay and front pay in amounts to be determined at trial, compensatory damages, punitive damages, attorneys' fees, costs and interest;

E. On her Fifth Claim, back pay and front pay in amounts to be determined at trial, compensatory damages, costs and interest;

F. On her Sixth Claim, back pay and front pay in amounts to be determined at trial, compensatory damages and punitive damages, attorneys' fees, costs and interest;

G. On her Seventh Claim, back pay and front pay in amounts to be determined at trial, compensatory damages, liquidated damages, attorneys' fees, costs and interest;

H. On her Eighth Claim, back pay and front pay in an amount to be determined at trial, compensatory damages, costs and interest;

I. On her Ninth Claim, back pay and front pay in amounts to be determined at trial, compensatory damages and punitive damages, attorneys' fees, costs and interest; and

J. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       January 12, 2005

LIDDLE & ROBINSON, L.L.P.

By: _____
    Jeffrey L. Liddle (JL 8256)
    Christine A. Palmieri (CP 8235)
Attorneys for Plaintiff
800 Third Avenue
New York, New York 10022
(212) 687-8500